# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

**ORHAN E. ARSLAN,**

     **Plaintiff,**

**v.**                                                              **CASE NO:**

**FLORIDA INTERNATIONAL UNIVERSITY,**

     **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, ORHAN E. ARSLAN, (hereinafter "Plaintiff" or "Dr. Arslan"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, FLORIDA INTERNATIONAL UNIVERSITY (hereinafter "Defendant," or "FIU") and alleges:

## INTRODUCTION

1.      The Plaintiff brings this action against Defendant, his former employer, seeking to recover damages for unlawful discrimination based on age as well as retaliation in violation of the Age Discrimination in Employment Act ("ADEA") and the Florida Civil Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA").

2.     As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated and retaliated against him and altered the terms, conditions, and privileges of his employment because of his age in violation of his rights under the ADEA, and the FCRA.

3.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered actual damages: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, he has suffered and continues to suffer the loss of his professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4.     Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. §1367(a) and the principles of pendent jurisdiction.

6.     This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to

28 U.S.C. §§ 2201 and 2202.

7.      Venue is proper in the United States District Court for the Southern District of Florida, Miami Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Miami-Dade County, Florida.

## PARTIES

8.      Plaintiff is a 73-year-old male.

9.      Plaintiff is a member of a class protected against discrimination based on his under the ADEA and the FCRA.

10.     At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

11.     At all times material herein, Plaintiff was an employee entitled to protection as defined by the ADEA and the FCRA.

12.     The Defendant, FLORIDA INTERNATIONAL UNIVERSITY, is

a public university in Miami-Dade County, Florida, principally located at 11200 SW 8th St, Miami, FL 33199.

13.     At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Miami-Dade County, Florida.

14.     At all times material herein, Defendant met, and continues to meet, the definitions of "employer" under all applicable federal and state statutes including, but not limited to, the ADEA and the FCRA.

15.     Accordingly, Defendant is liable under the ADEA and the FCRA for the unlawful discrimination to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

16.     Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

17.     On October 26, 2023, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, age discrimination as well as retaliation.

18.     On May 22, 2024, the EEOC issued Plaintiff a Notice of Right to Sue in reference to his Charge of Discrimination (EEOC Charge No. 511-

2024-00427) against Defendant.

19.    More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore, Plaintiff is entitled to bring his FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and 760.11(8), Florida Statutes.

20.    All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

21.    Dr. Arslan is a well-established educator with over three decades of illustrious record of excellence in teaching in medical schools evidenced with consecutive recognitions as professor of the year, outstanding Preclinical Instructor, outstanding Sophomore Instructor of the year, Dean's performance award, and Education Bonus Awards. Dr. Arslan is an award-winning textbook author and a sought-after national curricular designer, having been involved in the design of the anatomy and neuroanatomy curricula at several medical schools in Texas, California, and Florida.

22.    On January 10, 2021, Dr. Arslan began working at FIU Herbert

Wertheim College of Medicine (HWCOM) as a Professor and Director for the Structure of the Human Body Course and as Director for the Anatomy Elective within the department of Cellular Biology and Pharmacology. Dr. Arslan reported directly to Dr. Stephen Black, chair of his department, and Dr. Vivian Obeso, Associate Dean for Undergraduate Medical Education.

23.    Shortly after his arrival, Vivian Obeso, then Associate Dean of Education, advised Dr. Arslan that Anatomy had been under probation for a decade by the Liaison of Committee of Medical Education (LCME), the sole accrediting body of Allopathic Schools of Medicine in the United States, and Dr. Obeso indicated to Dr. Arslan the importance of restructuring anatomy to pull out of this status. The LCME has the power to put a school on probation, among many other sanctions. Medical schools, including HWCOM, made a commitment to fulfill LCME standards to be accredited.

24.    Dr. Arslan also learned that despite the extensive contents of anatomy disciplines, the curriculum was surprisingly short, spanning only five weeks, highly unusual when contrasted with other accredited US medical schools in Florida and nationwide. Further, the imposition of scheduling restrictions and the lack of qualified anatomy educators compounded the difficulties that Dr. Arslan had to overcome to achieve the

desired results. Dr. Arslan reported these issues and the difficulties they posed to Dr. Obeso on several occasions and offered specific changes to address these challenges, but Dr. Arslan's concerns, and curricular remedies were either ignored or summarily dismissed.

25.    Nevertheless, Dr. Arslan embarked on a major curricular revamping and reorganization effort of the didactic presentations according to a systemic format with regards to sequence and contents. Dr. Arslan took the initiative, drafted a comprehensive restructuring plan, and submitted it to the curriculum committee.

26.    Dr. Arslan's carefully designed new anatomy curriculum took into consideration the nationally accepted anatomy objectives, reinforced by Dr. Arslan's experience in curricular design. With this positive spirit, Dr. Arslan moved forward and had to work hard to establish this new curriculum and overcome scheduling limitations and to adapt the massive instructional material within five weeks.

27.    Once the plan for the curricular restructuring was approved by the curriculum committee, and by the Associate Dean Obeso and Assistant Dean Fortun, Dr. Arslan embarked on a massive effort to implement it, giving particular attention to students' feedback from previous academic

years. Dr. Arslan also diverted enormous energy and effort toward converting the laboratory sessions into dynamic, multifaceted activities that encompassed introduction of emergency procedures, ultrasound instruction, image-based cross-sectional anatomy, topographic and prosection-based teaching.

28.     Dr. Arslan realized then that he also had to assign four days for exams, the afternoons of the five weeks for laboratory sessions, parcel time for reviews and engaged learnings, and leave one day for students to engage in clinical skills. These unprecedented artificial barriers left Dr. Arslan with three weeks to deliver his instructional materials. Nevertheless, and despite these severe limitations, Dr. Arslan moved ahead with the implementation of the curricular restructuring, realizing that the unusual time limitation would hinder optimum implementation.

29.     On December 16, 2021, Dr. Arslan was reappointed for the academic year 2022 in recognition of his effort, educational initiatives, teaching accomplishments, students' evaluations, evaluations of the associate dean for medical education, scholarly work, publications, and committee services.

30.     On June 16, 2022, Dr. Obeso was relieved of her post as associate

dean, and shortly after, Dr. Rebecca Toonkel, then assistant dean, was appointed as interim associate dean without national search and despite the availability of qualified candidates within Hebert Wertheim College of Medicine (HWCOM) and then shortly after she assumed the role of associate dean permanently. As a result of Toonkel's appointment highly qualified assistant deans submitted their resignation.

31.    On August 9, 2022, and shortly after her appointment, Dr. Toonkel called Dr. Arslan into a meeting and, in the presence of Assistant Dean Dr. Jenny Fortun, Dr. Toonkel advised Dr. Arslan that he would not be the anatomy course director any longer. Rather, Dr. Arslan would assume the role of co-course director for the academic year 2022, but with no responsibilities. This decision took Dr. Arslan by complete surprise, especially when Dr. Toonkel erroneously attempted to use Dr. Arslan's performance for 2021 as justification when Dr. Arslan's performance was thoroughly vetted for 2021 and Dr. Arslan was accordingly reappointed to lead the course for 2022. Also, Dr. Arslan was introduced as anatomy course director for the new incoming class during the College of Medicine orientation day. Dr. Arslan was further taken aback when he learned that the directorship had been assigned to Tracy Cassagnol, a newly appointed

faculty member from an unrelated department. Dr. Cassagnol was decades Dr. Arslan's junior and did not meet the minimum criteria to fulfill his role. Dr. Cassagnol had training in family medicine, but no formal or informal training in anatomy.

32.    On August 10, 2022, Dr. Toonkel sent Dr. Arslan an email reiterating her earlier justifications for removing his course director responsibilities.

33.    On August 15, 2022, Dr. Arslan met with Dr. Juan Cendan, Dean of the medical school, and conveyed his concerns regarding Dr. Toonkel's actions and remarks. Dr. Cendan eased Dr. Arslan's worries by telling him that Dr. Toonkel was "inexperienced," and because of Dean's comment Dr. Arslan considered the matter closed.

34.    On September 21, 2022, as a member of the Appointment and Promotion Committee, Dr. Arslan submitted his written evaluations regarding the promotion of four faculty candidates. Dr. Arslan indicated that two candidates on the education track within this group lacked the credentials, training, and expertise to get a promotion, and the committee unanimously endorsed his assessment and decided to reject their applications. One of these candidates, Dr. Gagani Athauda, served as

interim chair of Dr. Arslan's department for several years and happens to have close ties with Dr. Toonkel.

35.    On October 24, 2022, following the committee's decision, Dr. Stephen Black met with the committee members and urged them to reconsider their decision, arguing that denying the candidates' promotion could result in a mass exodus of faculty members from the institution. Ironically, this claim would later be proven unwarranted, since Dr. Athauda resigned on January 28, 2023, even though she was promoted.

36.    On December 13, 2022, during a town hall meeting organized by Dr. Toonkel, Dr. Toonkel disclosed her plan to extend the duration of the anatomy course instruction several additional weeks by distributing the contents of the course, which were previously taught in 5 weeks, across two academic years. Dr. Toonkel indicated that this new change may not achieve the desired goals for years. Interestingly, this was Dr. Arslan's plan all along, but he was never allowed to implement it.

37.    On January 4, 2023, Dr. Toonkel hastily called Dr. Arslan into a Zoom meeting. In that meeting and in the presence of Dr. Black, Dr. Toonkel informed Dr. Arslan that his appointment for the academic year 2023 would not be renewed. When Dr. Arslan asked Dr. Toonkel about the reason for

her decision, Dr. Toonkel simply referred Dr. Arslan back to her email dated August 10, 2022, despite her full knowledge that Dr. Arslan's performance in 2021 was deemed satisfactory enough to warrant his reappointment for 2022, albeit under challenging circumstances. At that point, Stephen Black intervened and responded to Dr. Arslan's question by stating that nonrenewal occurs when changes take place within the university's management/administrative positions, referring to the appointment of Rebecca Toonkel as Associate Dean of Education. Dr. Toonkel and HWCOM's claim that Dr. Arslan's non-renewal occurred because of performance-related reasons contradicts Dr. Black's statement. It is a pretext meant to conceal the discriminatory and retaliatory reasons behind Dr. Arslan's non-renewal.

38.    On January 5, 2023, Dr. Arslan received a letter via an email from Dr. Cendan affirming that his reappointment would not be renewed for the academic year 2023. This decision ignored Dr. Arslan's student evaluations, scholarly work, publications, and university service for 2022 documented in his Panther 180.

39.    Dr. Toonkel's re-used the same facts that justified Dr. Arslan's reappointment for 2022 to also warrant removal of his course directorship

and nonrenewal of his employment contract is a pretext for her retaliatory and discriminatory action. Dr. Toonkel's decision to delegate directorship of anatomy to a faculty member decades Dr. Arslan's junior and with no expertise or training in the field clearly proves that the adverse actions taken against Dr. Arslan bear obvious signs of age-biased and retaliatory motives. Additionally, the removal of Dr. Arslan's directorship responsibility in 2022 and the subsequent nonrenewal of his contract without any consideration to his accomplishments, positive evaluations, collaborative work, scholarship, and efforts to address every feedback for academic year of 2022 as documented in FIU Panther 180 indicate that biased motives are behind these arbitrary decisions and the professed reasons are mere pretexts.

40.     Coincidentally, after relieving Dr. Arslan of his duties as course director, Dr. Toonkel significantly increased the instruction time of the course, implicitly acknowledging one of Dr. Arslan's concerns about the curriculum. Additionally, Dr. Toonkel gave the role of director to someone decades younger than Dr. Arslan who has neither the training nor the expertise to take over his responsibilities.

41.     HWCOM refused to consider Dr. Arslan's repeated requests to extend the duration of the anatomy course from five to ten weeks or even

eight. Dr. Arslan's ability to fulfill his job was not only hindered by the time limitation, but by the passive aggressive attitude of Rebecca Toonkel, Jenny Fortun, and Rakesh Nair. Their utter indifference to Dr. Arslan's needs to properly conduct the course impeded Dr. Arslan's ability to optimally restructure it.

### COUNT I
### AGE DISCRIMINATION IN VIOLATION OF ADEA

42.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 41 of this Complaint as though fully set forth herein.

43.    Plaintiff's age was a determining factor in Defendant's decision to terminate him.

44.    Dr. Arslan made significant efforts to address the longstanding issues with the anatomy course, but his suggestions were disregarded.

45.    On January 4, 2023, Dr. Toonkel informed Dr. Arslan that his appointment for the academic year 2023 would not be renewed, ignoring Dr. Arslan's documented accomplishments and qualifications. Dr. Toonkel's subsequent actions, including appointing a significantly younger and inexperienced faculty member to replace him as course director, suggest

there were discriminatory motives behind the non-renewal of Dr. Arslan's contract.

46.     Defendant knowingly and willfully discriminated against Plaintiff based on his age in violation of the ADEA.

47.     As a direct and proximate result of Defendant's conduct described herein, Plaintiff has suffered from a loss of income and benefits for all of which he should be compensated.

**WHEREFORE**, Plaintiff, ORHAN E. ARSLAN, demands judgment against Defendant and requests the following relief:

A. Back pay;

B. Front pay;

C. Liquidated damages pursuant to 29 U.S.C. § 626(b);

D. Attorney's fees and costs; and

E. Other such relief as may be appropriate to effectuate the purposes of the ADEA.

<u>COUNT II</u>
**VIOLATION OF FLORIDA CIVIL RIGHTS ACT,
FLORIDA STATUTES §§ 760.01-11
Age Discrimination**

48.     Plaintiff alleges, realleges, and incorporates by reference all

allegations set forth in each of the preceding Paragraphs 1 through 41 of this Complaint as though fully set forth herein.

49.     Plaintiff is a 73-year-old male.

50.     At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

51.     Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes, in that the definition includes "an individual, association, corporation, joint apprenticeship committee, joint-stock company, labor union, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, or unincorporated organization; any other legal or commercial entity; the state; or any governmental entity or agency." § 760.02(6), Florida Statutes.

52.     At all times material herein, Defendant was and is an "employer" within the meaning of the FCRA. § 760.02(7), Florida Statutes.

53.     At all times material herein, Defendant's employees discriminated against Plaintiff because of his age.

54.     Plaintiff suffered age discrimination at the hands of Dr. Toonkel, who ignored Plaintiff's documented accomplishments and qualifications, informed him that his appointment for the academic year 2023 would not be

renewed, and appointed a significantly younger and inexperienced faculty member to replace him as course director.

55.    Defendant, as Plaintiff's employer, was obligated to guard against the discrimination of Plaintiff by his co-workers, supervisors, managers, and other persons and to protect Plaintiff from discrimination in the workplace.

56.    Plaintiff believed that Dr. Toonkel's offensive acts materially altered the terms and conditions of his employment as stated in his contract. Further, a reasonable person would have found that Dr. Toonkel's offensive acts materially altered the terms and conditions of Plaintiff's employment.

57.    Plaintiff did not welcome the discrimination and did not directly or indirectly invite or solicit it by his own acts or statements.

58.    At all times material herein, Defendant knew, or in the exercise of reasonable care should have known, of the discrimination and disparate treatment suffered by Plaintiff, but did not take prompt remedial action to eliminate the discrimination.

59.    Defendant violated the FCRA by, among other things, failing to promptly correct the discriminatory conduct toward Plaintiff once it learned of it and by subjecting Plaintiff to discrimination because of his age.

60.    Plaintiff, by being subjected to this discrimination created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of his employment with Defendant.

61.    The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination of Plaintiff, deprived him of statutory rights under the FCRA.

62.    As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to his family and relationships; and (d) other economic losses proximately caused and allowable under the FCRA, according to proof.

**WHEREFORE**, the Plaintiff, Plaintiff, ORHAN E. ARSLAN, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, FLORIDA INTERNATIONAL UNIVERSITY, and in favor of

Plaintiff, and respectfully requests that this Court grant the following relief:

A.      Grant judgment in favor of Plaintiff and declare that Defendant has violated the FCRA by discriminating against Plaintiff based on his age;

B.      Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of Defendant's discrimination against her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination he has endured;

C.      Award compensatory damages to Plaintiff in a sum that will properly and completely compensate Plaintiff for the nature, extent, and duration of the injuries and damages caused by Defendant's discriminatory conduct and actions, pursuant to and within the statutory limitations of the FCRA;

D.      Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.      Award Plaintiff pre- and post-judgment interest;

F.      Award Plaintiff his attorneys' fees, including litigation expenses,

and the costs of this action; and

G.      Grant such other and further relief as this Court may deem

equitable, just, and proper.

## COUNT III
## VIOLATION OF FLORIDA CIVIL RIGHTS ACT,
## FLORIDA STATUTES §§ 760.01-11
## Retaliation

63.     Plaintiff alleges, realleges, and incorporates by reference all

allegations set forth in each of the preceding Paragraphs 1 through 41 of this

Complaint as though fully set forth herein.

64.     Plaintiff is a 73-year-old male.

65.     Plaintiff reported his concerns regarding Dr. Toonkel's decision

not to reappoint him. He also advocated against the promotion of an

applicant with close ties to Dr. Toonkel.

66.     Defendant subjected Plaintiff to adverse employment actions in

retaliation for complaining about Dr. Toonkel actions and remarks to Dean

Cendan.

67.      The actions and inaction of Defendant, by and through the

conduct of its employees, supervisors, managers, and agents, as more particularly described hereinabove, constitute unlawful retaliation.

68.    As his employer, Defendant was obligated to guard against the retaliation of Plaintiff by his co-workers, supervisors, managers, and other agents of Defendant and to protect Plaintiff from retaliation in the workplace.

69.    Defendant violated the FCRA by, among other things, failing to promptly correct the retaliatory conduct toward Plaintiff once it learned of it.

70.    Plaintiff, by being subjected to this retaliation created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of his employment with Defendant.

71.    The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the retaliation against Plaintiff, deprived him of statutory rights under the FCRA.

72.    As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to

suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to his family and relationships; and (d) other economic losses proximately caused and allowable under the FCRA, according to proof.

**WHEREFORE**, the Plaintiff, ORHAN E. ARSLAN, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, FLORIDA INTERNATIONAL UNIVERSITY, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated the FCRA by retaliating against Plaintiff based on his complaints regarding age discrimination;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of Defendant's retaliation against him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the retaliation he has endured;

C.     Award compensatory damages to Plaintiff in a sum that will properly and completely compensate Plaintiff for the nature, extent, and duration of the injuries and damages caused by Defendant's retaliatory conduct and actions, pursuant to and within the statutory limitations of the FCRA;

D.     Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.     Award Plaintiff pre- and post-judgment interest;

F.     Award Plaintiff his attorneys' fees, including litigation expenses, and the costs of this action; and

G.     Grant such other and further relief as this Court may deem equitable, just, and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff respectfully requests a trial by jury.

Date this 5th day of August 2024.

*/s/ Jason W. Imler, Esq*

Jason W. Imler
Florida Bar No. 1004422

Alberto "Tito" Gonzalez
Florida Bar No. 1037033
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com